The next case on the docket is Misiak v. Borton. I hope I said that correctly. Is it McCarthy? Mr. McCarthy, you may proceed. Thank you. Please record, counsel. This is an administrative review brought by my client Rodney Misiak against the director of the Illinois Department of Insurance and the Department of Insurance pertaining to the decision of the department in adopting the recommendation and the decision of the hearing officer for the relocation of my client's permission or license as an insurance producer. There's a couple aspects of this case. First, there is a conviction of a felony involved in my client. And the felony was essentially a squabble with his fiancée, the mother of his child. And we'll go into that. Maybe you can clear up something on that for me. I mean, there was reference to four felonies. I mean, was there just one conviction or was it four counts? There were. I think there were at the time of this conviction, I think there were. He pleaded to, I think, two counts. And in 2000 or 2002, there were two other counts with the same lady. And now I don't know that those were felonies. I was never really clear on that, but they were charges. Were these convictions filed off record in this case? The record that came up was a listing of convictions from the circuit court's office where they were held. And whatever those said, that's just all I can say to that because I know nothing other than this conviction in 2011, 2012, my client reported it. But the Department of Insurance had certified copies of the records of convictions before then that were submitted by your client, correct? We didn't submit the certified copies. I believe they requested those from the circuit court's office. My client specifically had counsel write for him to say that he had just pleaded guilty. On the most recent one, he immediately reported. But in the entire process, the certified copies of convictions were present for the past incidents of criminal convictions, right? Yes. And that was, I think that was acquired during the investigation by this individual. But we have some considerations about the standards of review under the statute of the Department of Insurance because there's certain criteria that they're supposed to review as to whether he is or whether he should be revoked. And there's, I don't know, seven or eight different considerations. And the problem is under the system, the hearing officer gets to pick and choose what he likes. He's a hearing officer. And that's, in a sense, that's understandable. The hearing will raise a question as to whether it was clearly erroneous. The standard of review in these cases, basically we have to know on questions of law, we have manifest way the evidence when the only question is whether the conclusion is correct on the clear evidence. And then we have a situation like this, where we have evidence that we're arguing should never have been admitted, applied against rules of law. And the total confusion, mess, result allows this court to review it under a status of is it clearly erroneous? And what I like about clearly erroneous is the Supreme Court in the Sinkus case in 2008 said the reviewing court is left with a definite inferring conviction that a mistake has been made. Which I kind of like because clearly erroneous is nebulous enough. Now we have, was a mistake made. Mr. McCarthy, if you put aside all of the golden rule testimony, if you put that aside, you would agree with me, I think, that the hearing officer could have suggested revocation based upon the criminal convictions alone. That's true. Tell me why in your argument the criminal convictions alone didn't rise to the level of revocation. Well, because. But they were a mistake. That was a mistake. Because the hearing officer made so many mistakes all the way through. Well, put those, put the golden rule mistakes aside. I understand. Is it, is there an argument in your mind or on behalf of your client where the revocation was error just because of the convictions? In other words, should somebody convicted of domestic abuse lose their license? The. I've reviewed. Every decision that coming out of the Department of Insurance had, and there weren't that many domestic abuse cases. Most of them were fraud and other kinds of cases that were were obvious misuse of money. And this was a situation. If we take the standards. The nature and severity. That's the first standard for review on a felony. Well, it's a felony. You know, there's no doubt about that. But then it is not one that is directed against the public. It's not one of violence out to the public. I know the kind of felony that it was called that, you know, it's called a violent felony. But this case, the man pleaded guilty. When no one was hurt. And the history of his wife. He entered that plea was. He said in his testimony. That is. The mother of a child. Who's not an American citizen. If he went. Just accepted a six month. Children. That he was afraid that she would leave the country with the child. And so that was a real tough decision that he was making at the time. That's part of his testimony. Did the hearing officer have to find that testimony credible? You know. That's I don't think the hearing officer. Anything. That I said. That's credible. Well, I mean, and it's up to the hearing officer to determine the credibility of the witnesses, the way to get their testimony. And on review. You know, we generally would not reverse those kinds of findings. So he could have discounted that testimony is the point I'm making. Yes. And. He. He had no. The only testimony he had. Are the only facts he had about the conviction was what the conviction was. The only evidence he had. Around the behind the conviction. Or any sense of conviction. Is what we are. And. You know, that's. Part of. And what we offered. If I could go into some of the things that came up during the ruling. That are significant to this issue. Also. You may do whatever you wish. It's your argument. Thank you. See the. If. I can say. The. The. Mr. Misiac. Had been. An agent for 10 years. During that time. The. The only problem he had was. That was back in 2002. All the rest of the time. Over something like 5,000. Policies issued. Because. They do quite a volume. When they're doing. Online like this. He had no complaints. He didn't even have. Anybody saying. When they. When they asked. When they. Asked all these people. About him. Or to the extent. They asked anybody about him. No one ever said he was even employed. There's no. Evidence. That this man is. A. Threat. To. Anyone. Outside of. This relationship. We have with this. This woman. And. There's. A later decision. Medley versus. The department. Which. Had warning. To the effect that. The issue is really. Whether somebody can be trusted. To engage. In serving policies. To those who lack. Sophistication. And he. Mr. Missing. Meets that. When he was. Even after. The conviction. He remained. A volunteer. With. Coaching volunteer. A volunteer. To help. The. Universities. The. Students in the universities. Give. The medical insurance. Not necessarily. That he would write it. But he would help. Get it. And. He hadn't. Any. Other problems. Since. You know. During this time. Now. Let's see. One of the other. Let's look at the sentence. Two years of probation. And. That's. A sentence. So. That's. Telling us. That the prosecutor. In court. Realized. That. The circumstances. Under which he was. Under which he was. Pleading.   He was. Sticking his. Neck out. Because. I wasn't. His. Counselor. But. He was. Sticking his. Neck out. All the time. But he wrote to the. He wrote to. The department. Right after the. Conviction. And. That's what he felt. He had to do. To protect. His. Relationship. With his son. At the time.   The. Of all. There's. A series of. According to the statute. The. The. The. The. The. The. The. The. The.           The. The. The. The. The. The. The. The. The. The. Departments. Close to consider. The major. Nature. And severity. Time lapse. Since. When.  When. Well we.  Well we. Will. Will. Will. Will. Will. Will. Will. Will. Will. Will. Will. Will. Will. Will. Will. Will. Will. Will. Will. Will. Will. Will. Will. Will. Will. Will. Will. 2 Mr. I'm not sure, you know, what led to all of these, but there were certainly criminal conduct beyond the domestic abuse incident. And I'm betting that the violation of the order of protection was probably related to the woman and that prior incident. There was the 2002, I think, incident also with her, not her, but maybe the woman. It was her. Yeah, it was her. Okay. So there were other violations reported that were outside the scope of the domestic abuse, it appears. Not a lot, but there were some. And there, of timelines, there are some disconsults of this. That's true. I don't remember what the dates were. I don't have, but the court has that in the record anyway.    Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Now, you know, the nature of the work performed is interesting for this kind of production of insurance. This is, this is what they're doing here is essentially what the state is doing with Obamacare. That is, people go online, there's communication with somebody who knows more about the business than the applicant does, and they help walk them through the application process. That's what this is. And the, he may not, it's very, very, very likely that he's never going to meet face-to-face with any of these advocates. He doesn't handle any of their money. Their money is withdrawn directly from the, you know, from the bank accounts electronically. You know, I'm astonished, maybe I've been at this too long, but how the financial world has moved along these lines. This, this man is, is good at his job. He's, he's had a lot of fine results in the past, and he's paying an extreme price now for an unlucky, poor decision. Thank you. Thank you. You'll have some time after the next argument. Mr., you'll have to pronounce it for me, sir. B.S. Jot. B.S. Jot. B.S. Jot? Yeah, B.S. Jot's the one. Okay. Mr. B.S. Jot. Thank you. You may proceed. May it please the court, my name is Frank B.S. Jot, and I represent the defendants, the Illinois Department of Insurance, and its director, Andrew Gora. This appeal arises from the director's revocation of Misiak's insurance producer's license under Section 70 of the Illinois Insurance Code. The director revoked Misiak's license on two separate and independently sufficient grounds. First, under Section 70A6, on the basis of his domestic battery convictions, and second, under Section 70A8, for his professional misconduct while he worked with Golden Rule Insurance Company. Revocation was proper under each of those provisions, and this court should affirm because the decision to revoke under subsection 86, on the basis of the domestic battery convictions, was not clearly erroneous, and in addition, the hearing officer did not abuse his discretion in making various evidentiary rulings as to proof of professional misconduct. Now, initially, I just want to clarify that although Misiak challenges a number of the hearing officer's rulings regarding evidence of his conduct with Golden Rule, those challenges and evidentiary rulings are only relevant to the decision to revoke Misiak's license under subsection 88 for his professional misconduct while working with Golden Rule. Those decisions and that evidence has no bearing on the separate decision to revoke Misiak's license under subsection 86 on the basis of his domestic battery convictions. Under subsection 86, the director is authorized to revoke the license of a licensee who has been convicted of a felony. Here, there's no dispute that Misiak has been convicted of a felony. In fact, he has pled guilty to four counts of domestic battery, alleging that he struck, shoved, kicked his fiancee, and had previously been convicted of domestic battery in 2005. Now, there are some questions. So, yeah, can you clarify that for me? So there are four separate felony convictions, four different counts. Yes, he was charged with four different counts of felony domestic battery. It may have arisen out of the same incident. Yeah, all happening kind of at the same time. But those charges, I believe they can be found at pages 267 through 70 in the record. And then the actual conviction and sentencing order is at page 104. And in pleading guilty to those crimes, part of the charge was that he had previously been convicted of domestic battery in 2005. So by pleading guilty to that, that establishes the existence of both convictions. It's an enhancement. Right. Okay. Because, yes, as there are more domestic battery convictions, it goes up in terms of class of felony and so forth. Now, in deciding whether to mobilize— And then he was still given probation of only two years. Yes, Your Honor. Because if you plead to all four, you get the enhancement. There's a point where you can't get probation on domestic battery. I believe so. But what he had pled to was a class four felony. And so in that situation, probation was an available sentence up to 30 months. Thirty months was the maximum probationary sentence. Okay. And now in deciding whether to revoke on the basis of a felony conviction, the director considers ten factors which are set forth in the administrative code. Here, the hearing officer considered each of the ten factors, weighed those which favored revocation against those which favored Misiak, and then, based on an analysis, ultimately concluded that revocation was appropriate in this case. Now, in appeal, Misiak is asking this court to reweigh those factors and to reach the opposite conclusion. But this court should affirm because the decision to revoke was based on a reasonable application of the facts regarding his convictions to the factors set forth in the administrative code, and therefore are not clearly erroneous. As the hearing officer pointed out, a number of the factors support revocation. The first factor. Let's see. As far as standard of review, I understood you to say how the hearing officer weighed those factors is an abuse of discretion standard. Whether or not weighing those factors justified revocation. No. Well, weighing the factors, whether the decision to weigh those factors and decide to revoke would be reviewed under a clearly erroneous standard review because that would It's actually undisputed facts, pretty much. Pretty much. I mean, there is some dispute with Misiak's testimony. The Department of Insurance didn't call the victim of the domestic violence to testify or anything. No, she did not. We got his version of that. Right. But, yes, this decision would be reviewed under clearly erroneous standard review because it's the application of facts to a statutory standard. And as I'll get into later, those other evidentiary rulings regarding subsection K-8 are reviewed under a different standard, which is abuse of discretion. Here, the director in the first factor in the administrative code is authorized to revoke a license on the basis of a violent felony. And in this case, there's no dispute that domestic battery qualifies as a violent crime. Although Misiak testified at the hearing that he did not, in fact, commit domestic battery under all these other circumstances, the hearing officer was not required to leave that testimony, particularly in light of the fact that he had just recently pled guilty to all four charges. In addition, while more leniency is appropriate the longer period of time that has elapsed between the criminal act and the revocation, here, Misiak's license was revoked shortly after he pled guilty to domestic battery. In fact, he was still serving his sentence of probation both at the time his license was initially revoked and still even later when that revocation was sustained following the administrative hearing. Further, the director is to consider whether the licensee has been convicted of multiple offenses or there has been a pattern of criminal conduct. The hearing officer, consistent with that rule, found that the domestic battery convictions in this case established a pattern of violent conduct that was more troubling than just a single incident. Now, some of the factors, some of the other factors do support Misiak, and those were considered by the hearing officer and taken to an account. But weighing all those factors together, the hearing officer reasonably concluded that revocation was appropriate because Misiak had committed domestic battery, a violent crime, on more than one occasion. The second conviction occurred shortly before revocation. Misiak was still serving the sentence of probation at the time his license was revoked, and the multiple convictions established a pattern of violent conduct. Now, in response, Misiak argues that revocation was not proper because the domestic battery convictions only injured the specific victim and not the general public at large and are not directly relevant to his trustworthiness as an insurance producer. But a felony need not directly relate to insurance or trustworthiness because the first factor in the rule specifically provides, and I'll quote, violent criminals or sex offenders may be denied producer license privileges, comma, as well as those convicted of crimes which are insurance related and or involve untrustworthiness. So to require any felony to involve insurance or untrustworthiness in order to suffice to revoke the license would either read out that entire first clause, which specifically identifies violent criminals and sex offenders as candidates for revocation. Thus, the domestic battery convictions are sufficient under the plain language of the rules to support revocation in this case. Therefore, this court should affirm the revocation of Misiak's license under subsection A6 because that decision was not clearly erroneous, where the hearing officer considered all ten factors, thoughtfully weighed them against one another, and then ultimately concluded that revocation was warranted here. You talked about the factors up to the pattern of criminal conduct, but you didn't talk about any of the mitigating factors. I can address the mitigating factors. I mean, and they do weigh in favor of Misiak, and the hearing officer did not ignore them. He took them into account. He went through each factor and recognized that his prompt reporting of the conviction, his letters of recommendation, his work helping student-athletes obtain insurance, that those all weighed in Misiak's favor but were ultimately outweighed by the other factors which supported revocation, particularly the fact that domestic battery was a violent crime that he had been convicted more than once. I mean, the hearing officer really emphasized that this wasn't a single incident. He had been convicted of domestic battery both in 2005 and 2012, and that those factors ultimately outweighed those factors which supported Misiak. And because we're here on a clearly erroneous standard of review, so long as that application of the facts of the law is reasonable, this court should affirm, even if maybe another reasonable conclusion could also have been reached. So long as the hearing officer's conclusion was not unreasonable, then this court should affirm the decision on the basis of subsection A-6. And while the domestic battery convictions provide a sufficient basis to revoke on subsection A-6 alone, revocation was also proper under subsection A-8. And due to Misiak's professional misconduct while working with the Golden Rule. Now, on appeal, Misiak does not argue that the hearing officer clearly erred in his application of those facts regarding his work with Golden Rule, of the admitted evidence regarding his conduct with Golden Rule, in applying those facts to the statutory standard in subsection A-8. Rather, he argues that there was error because that decision was based on evidence which never should have been admitted in the first place. And so what Misiak is really challenging is the hearing officer's evidentiary rulings, which are not reviewed under a clearly erroneous standard of review. Because clearly an erroneous standard of review only applies to these questions of fact and law. And the specific standard of review, which is appropriate, depends on the nature of the specific questions before the court. So questions of law are viewed de novo, questions of fact manifest weight. Here, we're talking about evidentiary rulings. And those rulings are reviewed for an abuse of discretion and are subject to reversal only if the complaining party can demonstrate prejudice as a result of that ruling. Here, Misiak has not made a showing of both those requirements as to any of his challenges. And unless this court has further questions about that issue, the defendants will stand on their briefs as to the reason why each of those individual challenges fails to meet that burden. Well, is it true that the Golden Rule investigator did not interview all of the clients of the plaintiff? The Golden Rule investigator brought them? Yes. One of his acclaims is that you, meaning Golden Rule, only interviewed people who had made a complaint. And that the other individuals that were placed with Golden Rule were not interviewed. Well, the investigation began because of the complaints that were raised by a sex offender, Kellogg, I believe. And then I think it was only 16 of them actually responded to the questionnaire because not everybody's going to respond to something like that. And then it was on the basis of those responses to the questionnaires that Golden Rule ultimately terminated its contract with him. And among those people who responded to the questionnaires and financed was Linda Condalone, who testified at the hearing. But ultimately, again, Ms. Yick is – My question is, she only interviewed the people who had made a complaint with Golden Rule about his conduct. Right. She didn't interview the people who were very happy with him. No, Your Honor. But again – but also, one single violation is still a violation of the rules. I understand, but it seems odd to me that Golden Rule waited so long to make a complaint to the Department of Insurance about this individual. Well, Golden Rule actually terminated Ms. Yick's contract, and I believe it was 2008 or 2009. And at that point – And did they make a complaint to the Department of Insurance when that happened? Yes. Yes. Golden Rule sends a letter to the Department of Insurance. And that's what initiated the Department's investigation into Ms. Yick, which then started at that point. In what year? That was either late 2008 or early 2009. No, no, no. The Department of Insurance didn't think much – didn't do anything for a while. Well, it was an ongoing investigation for – How do you know that? Because that's based on Anderson's testimony in the hearing, that he began the investigation once he received the letter from Golden Rule, notifying the Department that Golden Rule had terminated Ms. Yick's contract on the basis of its own internal investigation. And then Anderson began to investigate Ms. Yick. But with regard to the sufficiency of the evidence, again, Ms. Yick isn't challenging that the evidence which was admitted was insufficient to meet the statutory standard in subsection 8.8. He's rather alleging that these number of different evidentiary rulings were improper and that on that basis the revocation should be reversed. And in any event, regardless of the evidence under subsection 8.8, subsections 8.6 and 8.8 provided distinct, separate, and independently sufficient bases. And so theoretically this Court could sustain on either one or the other or whatever this Court deems. But revocation was proper under both. And finally, in conclusion, this Court should affirm the revocation of Ms. Yick's license on the basis of his domestic battery convictions under subsection 8.6. Because that decision was not clearly erroneous, it was based on a consideration of all ten factors set forth in the Administrative Code and was supported by evidence showing that Ms. Yick had been convicted of domestic battery, a violent crime, on two separate occasions, with the second occurring shortly before revocation occurred. And while those convictions provide a sufficient basis to revoke Ms. Yick's license under subsection 8.6, revocation was also proper under subsection 8.8 because the hearing officer did not abuse his discretion in various evidentiary rulings as to proof of that charge. And unless this Court has any further questions, I'd like to thank you for your time and ask that you affirm the Director's revocation. Thank you very much. I appreciate your argument. Thank you. Excuse me. Briefly. Thank you, Your Honor. Briefly, I think there is no evidence to indicate that Golden Rules investigators ever talked to any of these people. They replied back, and I spoke about that during the hearing. This is all hearsay. Everything is hearsay. And the hearing officer allowed it anyway. But she didn't check the reports. She didn't talk to the people who, whoever talked to them, it wasn't her, from Golden Rules. But she didn't check with them, and she didn't talk directly to the Golden Rules people, or the people who called or wrote, because I specifically asked her that under cross-examination. And then, finally, there's only one court case that anybody has ever, or appellate court case that anybody has ever cited on this issue, and that's the Medley case that I mentioned before. Now, it's a 1992 case, but there the court stated sufficient retaliation, and this is the wording that the hearing officer used in quoting it. The type of rehabilitate, excuse me, sufficient rehabilitation, excuse me, the type of rehabilitation required here is such that the licensee can be trusted to engage in selling and securing of insurance policies which may be intricate and may involve insurance or prospective insurance who lack sophistication in such matters. And then he goes on to say, despite what evidence we presented, Mr. Michigan talked about, said the convictions, just being a mild nature of themselves, prohibited his having a license. And he didn't care about the evidence of rehabilitation. He just went right past that. And that's contrary to the law. So we ask you to consider reversing the department and department Mr. Michigan's license. Thank you for your attention. Thank you very much. Thank you, Mr. McCarthy. Okay, this matter will be taken under advisement and a disposition will be issued in due course. Thank you, gentlemen, for your audience today. We appreciate it.